MATRIX ESSENTIALS, INC.,
Plaintiff–Appellant,

v.

QUALITY KING DISTRIBUTORS, INC., Bernard Nussdorf, Glen Nussdorf, and Stephen Nussdorf, Defendants–Appellees.

Pro's Choice Beauty Care, Inc. and Ruth Nussdorf, Interested–Party–Appellees.

No. 07–5562–cv.

United States Court of Appeals, Second Circuit.

April 15, 2009.

Steven Alan Reiss (Caitlin J. Halligan, Gregory Silbert, Arthur D'Andrea, on the brief), Weil, Gotshal & Manges LLP, New York, N.Y., for the Plaintiff–Appellant.

Linda U. Margolin (Jeffrey D. Powell, on the brief), Bracken & Margonlin, LLP, Islandia, N.Y., for the Defendants–Appellees.

Anthony J. Viola (Andre K. Cizmarik, on the brief), Edwards Angell Palmer & Dodge LLP, New York, N.Y., for the Interested–Party–Appellees.

\* The Honorable Jane A. Restani, Chief Judge of the United States Court of International Trade, sitting by designation.

PRESENT: Hon. GUIDO CALABRESI, Hon. DEBRA A. LIVINGSTON, Circuit Judges, and Hon. JANE A. RESTANI,\* Judge.

### SUMMARY ORDER

Plaintiff–Appellant Matrix Essentials, Inc. ("L'Oreal")[1] appeals from the judgment of the United States District Court for the Eastern District of New York (Wexler, *J.*) granting Defendants–Appellees' and Interested–Party–Appellees' (collectively "Appellees") Rule 60(b) motion, terminating a consent decree and permanent injunction, and dismissing the remainder of L'Oreal's suit against Appellees for retrospective violation of the injunction. We assume the parties' familiarity with the facts, procedural history, and issues presented on appeal.

We review a district court's decision on a Rule 60(b) motion for abuse of discretion. *Barcia v. Sitkin*, 367 F.3d 87, 99 (2d Cir. 2004). Similarly, we review the denial of a petition for civil contempt for abuse of discretion. *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 285 (2d Cir.2008). A district court abuses its discretion when "(1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions." *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir.2001).

1.

L'Oreal first contends that the district court's decision to vacate the injunction was based on a clearly erroneous fac-

1. L'Oreal USA and related entities (collectively "L'Oreal") acquired Matrix in 2000, and L'Oreal initiated the contempt proceeding from which this appeal arises.

tual finding. It argues that the district court found that diversion "occurs when L'Oreal's authorized distributors sell Matrix products outside of the professional chain of distribution," but that in fact the source of diverted Matrix products is not distributors but salons. It is undisputed that distributors at least sometimes do divert product, J.A. at 187 [Tr. 437:21–23], 227 [Tr. 595:17–24]; Appellant's Br. at 26, so the district court's statement is not incorrect on its face. Rather, L'Oreal's contention appears to be that the district court implicitly found that salons do not engage in diversion and that this implicit finding is incorrect. We are not persuaded that the district court's opinion should be read as making any such implicit finding.

But even if the district court had made the challenged finding and even if such a finding would have been clearly erroneous, the error would have been harmless. The district court's opinion indicates that neither the distributor/salon issue nor his subsequent finding that L'Oreal does not genuinely try to stop diversion of Matrix products was central to his decision to vacate the decree. After making various factual findings, the district court wrote that he would exercise his discretion to vacate the decree "[f]or the reasons that follow," but in the subsequent analysis did not mention either the distributor/salon issue or the question of whether L'Oreal's efforts to stop diversion in Matrix products are genuine. He gave other reasons for vacating the decree that, he suggested, were the main considerations driving his decision. *See Matrix Essentials v. Quality King Distributors, Inc.*, 522 F.Supp.2d 470, 480 (E.D.N.Y.2007) (noting that the fact that Quality King's conduct is legal "weighs heavily in favor of" vacating the injunction, as does the fact that enforcing the injunction would remove

Pro's Choice from a market "while others remain free to engage in the same business").

2.

L'Oreal next contends that the district court erred by suggesting that it could vacate the decree merely on a finding that there had been a "significant change in circumstances," a standard that comes from *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 383, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992). In L'Oreal's view, injunctions that do not involve significant public rights can be vacated only on "a clear showing of grievous wrong." *See United States v. Swift & Co.*, 286 U.S. 106, 119, 52 S.Ct. 460, 76 L.Ed. 999 (1932). Even if we were to accept the view that *Rufo* only applies to cases that involve significant public rights, *Rufo* may indeed properly apply here because this case affects significant public rights even under L'Oreal's conception of that category. Trademark law is at least indirectly concerned with protecting the buying public. *Cf. In re Vuitton et Fils S.A.*, 606 F.2d 1, 4 (2d Cir.1979) (per curiam) ("Indeed, the very purpose of the individuals marketing the cheaper items is to confuse the buying public into believing it is buying the true article."). And the injunction, if enforced, would keep one significant competitor out of the diversion market in Matrix products, possibly driving up prices at discount retailers and implicating the same public interest in competition that, even in L'Oreal's view, calls for application of *Rufo* in antitrust cases. It is not correct to suggest, therefore, that this case has no effect beyond the parties, *see* Appellant's Br. at 45, and we reject the particular argument that L'Oreal has advanced as to why *Rufo* should not apply.

We emphasize that we express no view on the question of whether there might be

other limitations on the application of *Rufo* to cases such as this one, and we do not decide whether there is a per se rule limiting *Rufo* to institutional reform cases or cases in which the United States or an agency thereof is a party. L'Oreal did not clearly press this issue in its opening brief, and we exercise our discretion to treat it as waived. *See JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C. V.*, 412 F.3d 418, 428 (2d Cir.2005) ("[A]rguments not made in an appellant's opening brief are waived even if the appellant pursued those arguments in the district court or raised them in a reply brief."); *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal."). We note for the benefit of the parties that we would be unlikely to reach a different result if we did find it necessary to consider further the question of exactly what category of cases are governed by *Rufo*. But because both parties contend that the result of this case would be the same regardless of what standard applies, *see* Appellant's Br. at 46; Appellee's Br. at 44, the *Rufo* issue may not be squarely presented today and we therefore leave it for a future panel. *See United States v. Garcia*, 413 F.3d 201, 232 n. 2 (2d Cir.2005) (Calabresi, J., concurring) (noting that discussing a legal issue that is "not *necessary* to decide the case" is mere dicta and should not be treated as binding on future panels (emphasis added)).

### 3.

■ We agree with L'Oreal's argument that a remand is necessary for the district court to consider L'Oreal's evidence of damages. The district court bifurcated the bench trial in this case, addressing the question of whether the injunction should be vacated in the first stage and assessing damages in the second. After the first stage, the district court decided that it would "exercise[ ] its discretion to hold that it is no longer equitable for the 1990 Injunction to have prospective application." 522 F.Supp.2d at 479. The district judge regarded the second stage as unnecessary at that point and entered judgment for the Appellees. But the district judge did not state that he was vacating the injunction retroactively and did not discuss factors that would justify retroactive, rather than merely prospective, vacatur.

As we have often noted, "[g]enerally, injunctions and restraining orders must be obeyed until overturned, and failure to do so is punishable as contempt even though the order is later overturned." *Emery Air Freight Corp. v. Local Union 295*, 449 F.2d 586, 592 (2d Cir.1971). Although in appropriate circumstances a district court may terminate an injunction retroactively, *see Still's Pharmacy, Inc. v. Cuomo*, 981 F.2d 632, 638 (2d Cir.1992), doing so is not the ordinary practice and, in the circumstances of this case, at the very least requires some explanation of why retroactive vacatur is appropriate. Consequently, we construe the district court's order as merely a prospective vacatur and remand for consideration of what damages should be awarded for any violations of the injunction that may have taken place while it was still in effect.

■ L'Oreal requested that, in the event of a remand, the case be assigned to a different judge. But "adverse rulings, without more, will rarely suffice to provide a reasonable basis for questioning a judge's impartiality." *Chen v. Chen Qualified Settlement Fund*, 552 F.3d 218, 227 (2d Cir.2009). That the district judge was critical of some aspects of L'Oreal's presentation is not improper and does not justify reassignment.

We have considered all of L'Oreal's remaining contentions in this appeal and found them to be without merit. For these reasons, the judgment of the district court is AFFIRMED in part and VACATED in part and the case REMANDED.